IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| In the Matter of the Extradition of | : | |
| | : | 1:21-mj-75 |
| JAHTEL WILLIAMSON, aka JAHTEL | : | |
| SHANE WILLIAMSON, aka TIZZY | : | |

<u>BRIEF OF *AMICUS* REGARDING APPOINTMENT OF COUNSEL IN
INTERNATIONAL EXTRADITION CASES</u>

On March 10, 2021, the Court entered a text order appointing undersigned counsel as *amicus* "to assist the Court in considering preliminary questions of appointment of counsel and the structure of further proceedings." Pursuant to that appointment, and in preparation for the hearing on March 11, 2021, counsel hereby submits the following brief.

<u>Introduction</u>

Appointment of counsel is authorized and regulated by the Criminal Justice Act of 1964, 18 U.S.C. § 3006A, as implemented in the Middle District of North Carolina by the Criminal Justice Act Plan adopted and approved by this Court on January 29, 2020, and approved by the Judicial Council of the Fourth Circuit on February 25, 2020. Both this Court's "plac[ing] in operation" its Criminal Justice Act Plan (CJA Plan), and "approval by the judicial council of the circuit," are specifically authorized and required by statute. 18 U.S.C. § 3006A(a). Four CJA Plan provisions appear relevant to

the question of whether the Court is empowered to appoint counsel in international extradition cases.

## CJA Plan, Section IV.A.1.k

First, representation "*must* be provided for any financially eligible person who … is entitled to appointment of counsel under the Sixth Amendment to the Constitution." CJA Plan, Section IV.A.1.k (emphasis in original). However, as the Eighth Circuit observed in a case involving extradition between two states of the United States, "[i]t is well settled that extradition proceedings are not considered criminal proceedings that carry the sixth amendment guarantee of assistance of counsel." *Chewning v. Rogerson*, 29 F.3d 418, 421 (8th Cir. 1994) (citing decisions from the First, Second, Fifth and Seventh Circuits). The same is true with regard to international extradition. *DeSilva v. DiLeonardi*, 181 F.3d 865, 868-69 (7th Cir. 1999) ("there is no Sixth Amendment right to counsel in extradition proceedings") (*citing Romeo v. Roache*, 820 F.2d 540, 543-44 (1st Cir. 1987)).

> Extradition is simply a procedure by which one sovereign nation turns over custody of a person pursuant to a request from another sovereign nation. As such, the courts have routinely rejected arguments that extradition proceedings are "criminal prosecutions" subject to all the rights attendant to such proceedings. *See, e.g.*, [*Matter of Extradition of*] *Burt*, 737 F.2d [1477,] at 1486 [(7th Cir. 1984)]; *Jhirad v. Ferrandina*, 536 F.2d 478, 484-85 & n. 9 (2d Cir.), *cert. denied*, 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976).

*Sahagian v. United States*, 864 F.2d 509, 513 (7th Cir. 1988). Thus, Section IV.A.1.k. of the CJA Plan neither requires nor authorizes appointment of counsel in international extradition cases.

CJA Plan, Sections IV.A.1.d and IV.A.1.l

The CJA Plan further provides that representation "*must* be provided for any financially eligible person who … is under arrest, when such representation is required by law, [or] … faces loss of liberty in a case and federal law requires the appointment of counsel." CJA Plan, Sections IV.A.1.d and IV.A.1.l (emphasis in original). Title 18, United States Code, Section 3184 authorizes this Court to conduct a preliminary hearing in international extradition cases, 18 U.S.C. § 3189 prescribes the place and character of such a hearing, 18 U.S.C. § 3190 addresses the evidence that may be considered at such a hearing, and 18 U.S.C. § 3191 provides for obtaining witnesses, at government expense, for indigent fugitives. However, none of these statutes provide for appointment of counsel for indigent fugitives. Likewise, the extradition treaty relevant here does not provide for appointment of counsel for indigent fugitives. *Extradition Treaty Between the United States of America and the United Kingdom of Great Britain and Northern Ireland, and related Exchanges of Letters, U.S.-U.K.,* Mar. 31, 2003, S. Treaty Doc. No. 108-23 (2004).[1] Thus, Sections IV.A.1.d and IV.A.1.l of the CJA Plan neither

---

[1] As amended. See Doc. # 2 at 1, n.1.

require nor authorize appointment of counsel in international extradition cases.

## CJA Plan, Section IV.A.2.g

Finally, "[w]henever a district judge or magistrate judge determines that the interests of justice so require, representation *may* be provided for any financially eligible person who … is held for international extradition under Chapter 209 of Title 18, United States Code." CJA Plan, Section IV.A.2.g (emphasis in original). An identical provision for discretionary appointment of counsel in international extradition cases is contained in the Model Criminal Justice Act Plan upon which the current Middle District CJA Plan is based. Guide to Judiciary Policy, Vol. 7A, Appx 2A (May 21, 2019). On its face, Section IV.A.2.g of the CJA Plan authorizes the appointment of counsel in international extradition cases such as this. However, the Criminal Justice Act itself does not list international extradition cases among either its mandatory or discretionary bases for appointment of counsel. 18 U.S.C. §§ 3006A(a)(1), (2). Thus, regardless of this Court's inherent authority to appoint counsel - such as its appointment of the undersigned as *amicus* counsel in this case - one court has questioned whether the Criminal Justice Act authorizes the expenditure of appropriated funds for appointed counsel in cases not specifically mentioned in the Act. *United States v. Flores*, 2012 WL 1463602 (M.D.N.C. April 27, 2012) (collection of criminal monetary

penalties). Citing those same concerns, last year that court declined to appoint counsel in two international extradition cases. Doc. # 9 at 14 (citing *In re Extradition of Lautissier*, No. 1:19-mj-377 (M.D.N.C. Feb. 10, 2020); *In re Extradition of Hopkins-Saia*, No. 1:19-mj-378 (M.D.N.C. Feb. 10, 2020)).[2] Like the Government, *amicus* "is not aware of any other court … [that has] decline[d] to appoint counsel for an indigent fugitive in international extradition proceedings. *Id.*

General Federal Fiscal Law

In a recent decision involving "reprogramming" Department of Defense funds to build a wall along the border between the United States and Mexico, the Ninth Circuit explained that the "Constitution assigns to Congress the power of the purse. Under the Appropriations Clause, it is Congress that is to make decisions regarding how to spend taxpayer dollars." *Sierra Club v. Trump*, 929 F.3d 670, 706 (9th Cir. 2019). That same principle is reiterated in an even more recent decision involving a challenge to the "conscience rule" for federally funded health care providers. *New York v. United States Department of Health and Human Services (HHS)*, 414 F. Supp. 3d 475, 562 (S.D.N.Y 2019) ("The Constitution vests the spending power in Congress

---

[2] More recently, that same court declined to appoint counsel under Section IV.A.2.e of the CJA Plan in a target letter case. 1:20-mj-32 (M.D.N.C.). The court then appointed undersigned counsel for the limited purpose of appealing that order, and the Chief District Judge granted the appeal, vacated the Magistrate Judge's order, and directed the appointment of counsel. *Id.*

alone.") In *Flores*, the court explained, "The established rule is that the expenditure of public funds is proper only when authorized by Congress, not that public funds may be expended unless prohibited by Congress." 2012 WL 1463602, *3 (quoting *United States v. MacCollom*, 426 U.S. 317, 321 (1976) (internal quotation marks omitted)). However, Congress does not specify exactly how every federal dollar is spent.

> Congress may delegate its spending authority to an executive agency, and the agency, in turn, may exercise a degree of discretion in deciding how to spend appropriated funds. *See, e.g., Clinton v. City of New York*, 524 U.S. 417, 466–67, 118 S.Ct. 2091, 141 L.Ed.2d 393 (1998) (Scalia, J., concurring) (listing examples of spending authority delegated to Executive Branch dating to Founding, and noting that "[t]he constitutionality of such appropriations has never seriously been questioned").

> The agency, however, must exercise its delegated spending authority consistent with the specific congressional grant; "the degree of agency discretion that is acceptable varies according to the scope of the power congressionally conferred." *Whitman*, 531 U.S. at 475, 121 S.Ct. 903; *see also City of Arlington*, 569 U.S. at 296–97, 133 S.Ct. 1863 (agency discretion cabined by scope of delegation). An agency may not withhold funds in a manner, or to an extent, unauthorized by Congress. *Train v. City of New York*, 420 U.S. 35, 44–46, 95 S.Ct. 839, 43 L.Ed.2d 1 (1975); *see City and Cty. of San Francisco v. Trump*, 897 F.3d 1225, 1235 (9th Cir. 2018) ("Absent congressional authorization, [an agency] may not redistribute or withhold properly appropriated funds in order to effectuate its own policy goals [without violating the separation of powers].");  *In re Aiken Cty.*, 725 F.3d 255, 261 n.1 (D.C. Cir. 2013) (Executive Branch "does not have unilateral authority to refuse to spend ... the full amount [of funding] appropriated by Congress for a particular project or program"); *City and Cty. of San Francisco v. Sessions*, 372 F. Supp. 3d 928, 947 (N.D. Cal. 2019) (Department of Justice's funding conditions violated sepa-

ration of powers because Congress had not authorized DOJ to impose such conditions); *New York*, 343 F. Supp. 3d at 238 (same).

New York v. HHS, 414 F. Supp. 3d at 562. While this case involves a program administered by the Judiciary, not the Executive, the same principles apply.

## The Criminal Justice Act

The Criminal Justice Act delegates to the Judiciary wide discretion in implementing its basic requirement "for furnishing representation for any person financially unable to obtain adequate representation in accordance with this section." 18 U.S.C. § 3006A(a).

> The Criminal Justice Act places the national administration of the defender program under the authority of the Judicial Conference of the United States (JCUS or Judicial Conference) and the Administrative Office of the United States Courts (AO or Administrative Office). JCUS is authorized to create rules and regulations for the program [18 U.S.C. § 3006A(h)], while the director of the AO is tasked with supervising the expenditures of funds appropriated for indigent defense [18 U.S.C. § 3006A(i)]. The statute also charges JCUS with determining the hourly rate for panel attorneys [18 U.S.C. § 3006A(d)(1)], as well as the maximum amount to be paid to a panel attorney on any one case without additional justification and oversight [18 U.S.C. § 3006A(d)(2)].

*2017 Report of the Ad Hoc Committee to Review the Criminal Justice Act (Cardone Report) at* 19. The discretion delegated to the Judiciary also includes multiple other decisions that greatly impact the expenditure of public funds, including whether a particular judicial district will "establish a defender organization," whether such organization will be a "Federal Public

Defender Organization" or a "Community Defender Organization," and whether the Director of the Administrative Office of the United States Courts shall … provide representation for and hold harmless, or provide liability insurance for," Federal Public Defender and Community Defender officers and employees. 18 U.S.C. §§ 3006A(g)(1), (2)(A), (2)(B), (g)(3). Of course, the mere delegation of discretion to the Judiciary with respect to these decisions does not necessarily mean that appointment of counsel is authorized in this case, especially since the Criminal Justice Act does not list international extradition cases among its mandatory or discretionary bases for appointment of counsel. 18 U.S.C. §§ 3006A(a)(1), (2). However, just as "Congress may delegate its spending authority to an executive agency, and the agency, in turn, may exercise a degree of discretion in deciding how to spend appropriated funds," Congress has delegated considerable decision-making authority to the Judiciary, including authority to make decisions with significant financial consequences. *New York v. HHS*, 414 F. Supp. 3d at 562. Moreover, Congress specifically authorized the Judicial Conference of the United States to "issue rules and regulations governing the operation of plans formulated under [the Criminal Justice Act]. 18 U.S.C. § 3006A(h). The "rules and regulations" adopted by JCUS include the provision for discretionary appointment of counsel in international extradition cases contained in the Model Criminal Justice Act Plan upon which the current Middle District CJA Plan is based. Guide to Judiciary Policy, Vol. 7A, Appx

2A (May 21, 2019). Finally, it is important to note that Congress has never acted to limit or stop appointment of counsel in international extradition cases. That is significant because "a fundamental principle of appropriations law is that where Congress merely appropriates lump-sum amounts without statutorily restricting what can be done with those funds, a clear inference arises that it does not intend to impose legally binding restrictions." *Salazar v. Ramah Navajo Chapter*, 567 U.S. 182, 199-200 (2012) (citations and internal quotation marks omitted). "An agency's discretion to spend appropriated funds is cabined only by the text of the appropriations." *Id.*

In addition to Congress' express delegation of authority to the Judiciary to "issue rules and regulations governing the operation of plans formulated under [the Criminal Justice Act]," Congress has continued to appropriate funds for CJA programs and payments that include appointment of counsel in international extradition cases for more than a quarter century. 18 U.S.C. § 3006A(h). As the United States District Court for the District of Columbia explained, authorization may be inferred from those ongoing appropriations.

> Congress passes all federal laws in this country. U.S. Const. art. I, § 1 ("All legislative Powers herein granted shall be vested in a Congress of the United States[.]"). That includes both laws that authorize the expenditure of public monies and laws that ultimately appropriate those monies.
>
> Authorization and appropriation by Congress are nonnegotiable prerequisites to government spending: "No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law...." U.S. Const. art. I, § 9, cl. 7; *see also United States v. MacCollom,* 426 U.S. 317, 321, 96 S.Ct. 2086, 48 L.Ed.2d 666

> (1976) ("The established rule is that the expenditure of public funds is proper only when authorized by Congress, not that public funds may be expended unless prohibited by Congress."). The distinction between authorizing legislation and appropriating legislation is relevant here and bears some discussion.
>
> Authorizing legislation establishes or continues the operation of a federal program or agency, either indefinitely or for a specific period. GAO *Glossary* at 15. Such an authorization may be part of an agency or program's organic legislation, or it may be entirely separate. *Id.* No money can be appropriated until an agency or program is authorized, *although authorization may sometimes be inferred from an appropriation itself. Id.*

*United States House of Representatives v. Burwell*, 130 F. Supp. 3d 53, 58 (D.D.C. 2015) (emphasis added).

Specific provision for the discretionary appointment of counsel in international extradition cases first became Judicial Conference policy in September 1990. Model Criminal Justice Act Plan, Guide to Judiciary Policy, Vol 7A, Appx 2A. CR-DEFSVS-SEP 90. It has remained Judicial Conference policy ever since, including in the most recent (May 21, 2019) Model Plan. "In practice, extradition magistrates *routinely* appoint counsel for eligible persons in such cases." M. Abbell, *Extradition to and from the United States* at 33, n. 82 (2010) (emphasis added).[3] That policy and practice certainly make sense, given the "significant liberty interests" involved. *Id.* Indeed, even prior to adoption of the current CJA Plan, the Federal Public Defender for the Middle District of North Carolina was appointed in an international

---

[3] As the Government properly notes, "other courts routinely appoint counsel for indigent fugitives." Doc. # 9 at 14 (collecting cases).

extradition case. *Matter of Extradition of Mironescu*, 1:03-mj-205 (M.D.N.C.). The Judicial Conference policy, issued pursuant to express Congressional authorization, is contained in the Guide to Judiciary Policy, an easily accessible public document. Moreover, just as in this case, international extradition cases do not remain sealed as a matter of course. Thus, the practice of appointing counsel in international extradition cases is both "routine," and a matter of public record. M. Abbell, *Extradition to and from the United States* at 33, n. 82 (2010). In sum, the policy and practice of appointing counsel in international extradition cases has been a routine matter of public record for more than a quarter century, but Congress has continued to appropriate funds for CJA programs and payments, up to and including Fiscal Year 2021. Under the circumstances, Congressional "authorization [for appointment of counsel in international extradition cases] may … be inferred from the appropriation itself." *Burwell*, 130 F. Supp. 3d at 58. *See also Young v. Tennessee Valley Authority,* 606 F.2d 143 (6th Cir. 1979), *cert. denied,* 445 U.S. 942 (1980) (TVA's asserted authority to build power plants, based on ambiguous enabling legislation, ratified by appropriation of funds for such construction); *Atchison, Topeka & Santa Fe Railway Co. v. Summerfield*, 229 F.2d 777 (D.C. Cir. 1955), *cert. denied*, 351 U.S. 926 (1956) (authority of Postmaster General to conduct mail transportation experiment ratified by appropriation of funds under circumstances showing Congress was fully aware of experiment).

## Conclusion

For all of these reasons, and in the absence of controlling authority to the contrary, *amicus* concludes the Criminal Justice Act, as implemented by Section IV.A.2.g of the CJA Plan, authorizes the appointment and payment of counsel, including members of the CJA Panel, in international extradition cases, subject to the Court's assessment of whether the interests of justice so require. That was, necessarily, the judgment of this Court when it adopted the current MDNC CJA Plan, the judgment of the United States Court of Appeals when it approved the current CJA Plan, and the judgment of the Judicial Conference of the United States when it first adopted the policy in 1990. Accordingly, *amicus* believes the Court has discretion to appoint counsel for Mr. Williamson. Given the role the Office of the Federal Public Defender has already taken in the matter as *amicus*, counsel recommends appointment of a member of the CJA Panel.

Respectfully submitted, this the 10th day of March, 2021.

> LOUIS C. ALLEN III
> FEDERAL PUBLIC DEFENDER
>
> /s/ Eric D. Placke
> ERIC D. PLACKE
> First Assistant Federal Public Defender
> Arkansas State Bar No. 86207
> North Carolina State Bar No. 20671
> 301 N. Elm Street, Suite 410
> Greensboro, NC 27401
> (336) 333-5455
> Eric_Placke@fd.org

CERTIFICATE OF SRVICE

I hereby certify that on March 10, 2021, I electronically filed the foregoing Brief of *Amicus* with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

>Mr. Tanner L. Kroger
>Assistant United States Attorney
>101 South Edgeworth Street
>Greensboro, NC 27401

Respectfully submitted,

>/s/ Eric D. Placke
>ERIC D. PLACKE
>First Assistant Federal Public Defender